1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT
9                      CENTRAL DISTRICT OF CALIFORNIA

10   MELVYN KLEIN, derivatively on          Case No. 8:17-cv-00123-AB (JPRx)
     behalf of nominal defendant OPUS
11   BANK,                                   **ORDER GRANTING-IN-PART
                                             PLAINTIFF'S REQUEST FOR
12                        Plaintiff,         ATTORNEYS' FEES**
13   v.
14
15   STEPHEN H. GORDON, *et al.*,
16                        Defendants.

17         Before the Court is a motion for attorneys' fees filed by Plaintiff Melvyn Klein

18   ("Plaintiff"), acting derivatively on behalf of nominal defendant Opus Bank ("Opus").

19   Dkt. No. 61.  On October 10, 2018, the Court instructed Plaintiff to produce its billing

20   records in support of its Motion and set a briefing schedule for the submission.  Dkt.

21   No. 85.  On October 22, 2018, Plaintiff submitted its billing records.  Dkt. No. 87.  On

22   November 5, 2018, Defendants Stephen Gordon, *et al*. ("Defendants") opposed

23   Plaintiff's submission and noticed a hearing.  Dkt. No. 89.  Plaintiff submitted its

24   response in support of billing records on November 21, 2018.  The Court heard oral

25   argument regarding the motion on February 1, 2019.  For the following reasons, the

26   Court **GRANTS-IN-PART** Plaintiff's Motion.

27   **I.    BACKGROUND**

28         The facts of this case are well known by the parties.  On January 29, 2017,

1    Plaintiff filed a Complaint against Defendants alleging that Defendants made
2    misstatements and failed to disclose materially adverse facts about the company which
3    ultimately harmed Opus's stock price and impacted its shareholders.  Plaintiff's legal
4    representation began as early as late October 2016 when attorneys from Gainey
5    McKenna & Egleston ("GM&E") began to conduct research regarding Plaintiff's
6    potential shareholder derivative suit.  The parties engaged in multiple mediations as
7    well as hearings before this Court before ultimately entering into a settlement on
8    January 29, 2018.  Fact Decl. Thomas McKenna ¶ 18 (Dkt. No. 63).

9         Pursuant to the settlement, Opus has agreed to institute certain corporate
10   reforms.  The settlement also indicates that Plaintiff's derivative action precipitated
11   other corporate reforms that Opus has already instituted.  The settlement does not
12   involve any monetary payment.

13        Plaintiff now seeks a total award of attorneys' fees in the amount of $875,000.
14   In support of the request, Plaintiff argues that the derivative action conferred a
15   substantial benefit on shareholders in the form of corporate reforms.  Pursuant to the
16   Court's order, Plaintiff supplemented its motion for attorneys' fees with billing
17   records from GM&E, the Wagner Firm ("Wagner"), the Brown Law Firm, P.C.
18   ("Brown"), and the Rosen Firm, P.A. ("Rosen").

19        Defendants oppose the motion and raise numerous objections to the billing
20   records submitted by Plaintiff.

21   **II.    DISCUSSION**

22   **A. Plaintiff Is Entitled to Attorneys' Fees**

23        In the normal course, "plaintiffs . . . cannot recover attorneys' and accountants'
24   fees as an element of costs."  *Lewis v. Chiles*, 719 F.2d 1044, 1049 (9th Cir. 1983).
25   However, in a derivative action, a plaintiff may recover attorneys' fees when the
26   action confers a substantial benefit on a corporation.  *Mills v. Elec. Auto-Lite Co.*, 396
27   U.S. 375, 396–97 (1970).  The benefit need not be pecuniary to give rise to attorneys'
28   fees.  *See id*. at 395.  Rather, to conclude that the benefits realized by the corporation

1   are substantial, the Court must find that "the results of the derivative action

2   maintained the health of the corporation and raised the standards of the fiduciary

3   relationships and of other economic behavior, or prevented an abuse which would

4   have been prejudicial to the rights and interests of the corporation or would have

5   affected the enjoyment or protection of an essential right to the stockholder's interest."

6   *Fletcher v. A.J. Indus., Inc.*, 266 Cal. App. 2d 313, 324 (1968).  The fee award must

7   be reasonable.  *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d

8   1291, 1296 (9th Cir. 1994).  Where there is no fee agreement, reasonableness is based

9   upon the results achieved in light of the efforts of counsel.  *In re Oracle Sec. Litig.*,

10  852 F.Supp 1437, 1450 (N.D. Cal 1994).

11          Thus, in order to establish that Plaintiff's Counsel is entitled to fees, the

12  settlement must have a substantial benefit.  *In re Oracle Sec. Litig.*, 852 F.Supp at

13  1445.  Here, the settlement agreement between the parties acknowledges that Klein's

14  derivative action contributed, at least in part, to the initial corporate reforms adopted

15  by Opus which are aimed at preventing future misconduct.  Specifically, through the

16  settlement, the bank committed to: (1) improving its credit infrastructure, including

17  changes to credit administration, underwriting and ongoing portfolio management

18  processes; (2) refining the bank's credit risk appetite; (3) remediating the bank's credit

19  issues, including reducing the balances of criticized loans and continuing on planned

20  loan relationship exits; (4) implementing additional training regarding the credit

21  review process, impairment methodology, and the Bank's impairment framework; and

22  (5) adopting a new director retirement policy.  McKenna Fact Decl. p.2, Ex. A to Ex.

23  1.

24          Further, the bank agreed to adopt and implement corporate governance reforms

25  that will benefit itself and its shareholders.  The settlement agreement specifies that

26  such reforms shall remain in place for no less than two years and includes the creation

27  of a Chief Compliance Officer position. *Id.*  These significant changes and the

28  enhanced oversight of the bank's internal governance processes "raise the standards of

1    fiduciary relationships" of Opus to its shareholders.  Without the settlement, Opus

2    would not be required to make changes to enhance both the integrity of the bank and

3    the confidence of its shareholders.  The initial reforms already implemented and the

4    forthcoming corporate governance reforms strengthen banking standards and increases

5    confidence in the bank's shareholders impacted by Opus's previous

6    misrepresentations.  The Court must now determine whether Plaintiff's requested

7    attorneys' fees are reasonable.

8              **B. Plaintiff's Billing Records Support its Request for Attorneys' Fees**

9              Plaintiff produced over 80 pages of documents reflecting time billed by GM&E,

10   Wagner, Brown, and Rosen respectively.  Defendants proffer objections to Plaintiff's

11   billing records and request that the Court reduce Plaintiff's lodestar amount

12   accordingly.  The Court has conducted an independent review of the billing records

13   provided by Plaintiffs and determines that Plaintiff's time entries are mostly

14   reasonable for the work engaged in by Plaintiff.  For clarity of the record, Court will

15   briefly address the objections raised by Defendants.

16              **1.  Plaintiff's Redactions Are Reasonable**

17              Defendants briefly assert that Plaintiff's redactions are arbitrary and make it

18   difficult to understand Plaintiff's billing methods.  Upon review of Defendants' billing

19   records, the Court finds the minimal and seldom-applied redactions well within the

20   realm of what is necessary to protect potentially privileged communications while still

21   affording the Court sufficient detail to determine the reasonableness of the hours

22   requested.  Generally, Plaintiff's redactions are limited to small portions of each entry

23   and do not limit the Court's ability to determine the tasks conducted.  *Democratic*

24   *Party of Wash. State v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004) (similar redactions

25   deemed appropriate because the "redactions do not impair the ability of the court to

26   judge whether the work was an appropriate basis for fees").

27              **2.  Plaintiff Does Not Employ Block Billing**

28              Defendants further argue that Plaintiffs' billing records contain a number of

4.

block billed entries.  Defendants compiled a chart of entries it considers block billing; the Court's review of these entries does not support Defendants' claim.  For example, Defendants chart includes an entry of Mr. Schulper which reflects 6.5 hours billed on October 17, 2017.  Mr. Schulper's entry reads: "Analyze background materials and due diligence; preparation of draft Settlement Demand Letter".  Defendants argue that such an entry constitutes block billing.  The Court disagrees.

"Block billing is 'the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n. 15 (10th Cir 1996)).  Entries such as Mr. Schulper's and others highlighted by Defendants are adequate reflections of the tasks conducted.  While there are certain entries that contain larger amounts of time, these occasional entries include detailed descriptions of the tasks conducted and provide the Court with insight into the substance of the work billed.

### 3.  Plaintiff's Work Was Not Duplicative or Excessive

Defendants primarily contend that Plaintiffs overstaffed and overbilled its work done on the two derivative actions.

"[A]n attorney fee award should ordinarily include compensation for all the hours reasonably spent, including those relating solely to the fee." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001).  Inefficient, unnecessary, or duplicative efforts do not merit compensation.  *Id.*  Where a case is tried on a contingency basis, the Court should defer to the "winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento*, 534 F. 3d 1106, 1112 (9th Cir. 2008).  In *Moreno*, the court noted that "lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees" because "[t]he payoff is too uncertain." *Id.* 1112.

Plaintiff's Counsel began conducting research on a potential derivative suit in

5.

October 2016, filed and drafted a complaint against Defendants in January 2017 and received a favorable settlement in January 2018.  After settlement was achieved, Plaintiff requested attorneys' fees, which Defendants object, and have litigated the issue to date.  From October 2016 until the parties agreed upon the terms of a settlement, Plaintiff, working on a contingency basis, had no idea whether a positive result would be achieved.  Even after the parties reached a settlement, there remains ambiguity—that this Court must resolve—as to whether Plaintiff's counsel would receive a fee for its work.  Accordingly, the Court views Plaintiff's billing records with the appropriate level of deference.  In the Court's independent review, it has not identified time entries by Plaintiff's Counsel that appear unreasonable.

Defendants argue that Plaintiffs billing was clearly excessive.  In particular, Defendants argue that Plaintiffs overbilled time spent on: (1) drafting two class action complaints; (2)  drafting and preparing of Court submissions; (3) preparing for mediation; (4) preparing for court hearings; (5) travelling; and (6) tending to clerical and administrative tasks.  Further, Defendants argue that Plaintiff's efforts to litigate its attorneys' fees after the parties reached a settlement are unreasonable.

Nothing in Plaintiff's billing records suggests that the time and energy put into these various tasks were grossly misrepresented given the nearly two and a half years Plaintiff's counsel advocated on Plaintiff's behalf.  Moreover, Plaintiffs were involved in two separate derivative actions, which required counsel for different clients to review, revise, and correspond on particular issues.  The billing records reviewed by this Court reflect the amount of time that Plaintiff's Counsel expended to conduct research, draft Court documents, litigate its position, and ultimately litigate over attorneys' fees.  At each step of the dispute, multiple law firms and lawyers were involved and had to coordinate their efforts to achieve an acceptable settlement for Plaintiff.

While the Court recognizes the value of coordination between co-counsel, a modest reduction for clerical work, conference calls and discussions amongst co-

counsel, and the preparation of submissions is appropriate.[1]  To more accurately reflect the time billed, the Court will exercise its discretion and impose a 10 percent "haircut" reduction of Plaintiff's hours. *See Moreno* 543 F.3d at 1116.

### C. Lodestar Cross-Check

As the Court noted in its previous discussion of Plaintiff's attorneys' fee award, the lodestar method is appropriate for this case.  In applying the lodestar method, courts multiply "the number of hours reasonably expended on the litigation by the reasonable hourly rate" to calculate a lodestar figure.  *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993).  Courts may then adjust the lodestar figure upward or downward if circumstances warrant.  *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996).  In assessing the lodestar amount, the number of hours expended on the litigation must be "supported by adequate documentation." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 949.  Pursuant to the Court's Order, Plaintiff's lawyers have submitted billing records; the Court's review establishes that Plaintiff's estimate of 904.51 hours is a rough but not unreasonable estimate of hours worked.  In light of the foregoing, the Court calculates Plaintiff's lodestar at $619,589.35.  The Court reduces Plaintiff's initial request by 10 percent as discussed above for an adjusted lodestar amount of $557,630.42.

Plaintiff requests that the Court apply a lodestar multiplier to satisfy its request of $875,000, resulting.  While courts have approved such a multiplier as fair and reasonable,  *see, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-52 (9th Cir.) (providing a list of shareholder settlements and approving an average multiplier of 3.28), in light of the Court's 10 percent "haircut" based on its independent review of the provided billing records, an award of $815,000 adequately reflects this reduction.

---

[1] Plaintiff's Counsel provided nearly 100 hours specifically relating to various meetings and conferences between co-counsel. Additionally, Plaintiff's billing records include nearly 25 hours of clerical work, including booking hotels, flights and travel, scanning documents and reviewing time records. The Court's 10 percent haircut accounts for these time entries.

This is not to understate the scope of Plaintiff's work and the substantial benefit of resolving two complex derivative actions.  Indeed, the Court's amended award still grants Plaintiffs a multiplier of 1.4.

## III.   CONCLUSION

In light of the success attained by Plaintiff's Counsel and billing records which adequately reflect the time expended reaching a favorable result for Plaintiff, the Court **grants-in-part** Plaintiff's request for a fee award.  The Court will reduce Plaintiff's request to the total amount of $815,000.

**IT IS SO ORDERED.**

Dated: February 12, 2019

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE